```
                                                        ┌────────────────────────────────┐
                                                        │ USDC SDNY                      │
                                                        │ DOCUMENT                       │
                                                        │ ELECTRONICALLY FILED           │
                                                        │ DOC #:_____          │
                                                        │ DATE FILED:  12/14/2020        │
                                                        └────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------- X
                                   :

   UNITED STATES,                          :

                                     :

                    -v-                :

                                     :               1:17-cr-290-GHW

                                     :

   MIGUEL GUZMAN,              :               ORDER

                                     :

                     Defendant. :
--------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

      Miguel Guzman was involved in a multi-defendant conspiracy to sell crack and heroin. He possessed a firearm in furtherance of the conspiracy. Now he seeks compassionate release from prison because he has asthma and suffers from a recently discovered liver injury of uncertain nature. Mr. Guzman's medical conditions do not rise to the level of extraordinary and compelling reasons to release him before the end of the statutory minimum term of incarceration imposed by the Court as a result of his crimes. Because of that, and the fact that the Court cannot conclude that Mr. Guzman would not pose a risk to the community if released early, his application is denied.

## I.      BACKGROUND

      On January 4, 2019, the Court sentenced Miguel Guzman to a term of 60 months imprisonment. Sentencing Transcript, Dkt. No. 446 ("Tr."). That sentence represented the mandatory minimum sentence for his crime of conviction—possession of a firearm in connection with his participation in a drug trafficking conspiracy that sold substantial quantities of crack and heroin in the Bronx.

      On May 3, 2020, Mr. Guzman filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c). Dkt. No. 599 (the "Motion"). Mr. Guzman suffers from asthma, and, at the time of the

submission of his Motion, had recently received an abnormal test result for his liver function, which, he claimed in his Motion, suggested that it was likely that he suffers from liver disease. Motion at 6-7. A number of prisoners have been infected with COVID-19 at FCI Danbury, where Mr. Guzman is incarcerated. *Id.* at 9-11. He argues that he is imprisoned in conditions that "jeopardize his life" as a result of COVID-19, making his sentence greater than necessary to comply with the purposes of sentencing. *Id.* at 12.

The Court initially denied the Motion because Mr. Guzman had failed to satisfy the statutory preconditions to filing a motion under 18 U.S.C. § 3582(c). Dkt. No. 601. After Mr. Guzman presented evidence that the statutory preconditions had been satisfied, the Court invited briefing by the United States, Dkt. No. 602, and also directed the Bureau of Prisons (the "BOP") to provide information to the Court regarding Mr. Guzman's treatment and condition. Dkt. No. 604.[1]

In response to the Court's request, Mr. Guzman provided the Court a proposed plan for his release. Dkt. No. 605. In that plan, it was proposed that Mr. Guzman be placed in his brother's apartment in the Bronx, where he lives with his three adult sons. *Id.* According to his submission, Mr. Guzman would receive medical care through Medicaid, and have access to medical services through the Urban Health Plan, which "provides a sliding fee scale for individuals without health insurance and, according to their handbook, they do not deny services to patients based on their inability to pay." *Id.* at 2. An Urban Health Plan center is located blocks from Mr. Guzman's bother's apartment. *Id.* Lincoln Hospital is also near the apartment. *Id.*

On May 11, 2020, the BOP provided a partial response to the Court's request for additional information. Dkt. No. 606-1. In an affidavit by Joseph Ripka, the BOP described the steps taken at FCI Danbury to protect inmates against the spread of the disease. Those steps included a pause in movement of inmates to limit the spread of the virus, the implementation of limitations on group

---

[1] There is no dispute that Mr. Guzman has now satisfied the statutory preconditions to bringing his motion.

gatherings, the provision of face coverings to inmates, and screening for new inmates and contractors. *Id.* at 2-3. FCI Danbury has implemented separate housing spaces for inmates with symptoms ("Isolation") and for those without symptoms ("Quarantine"). *Id.* at 5. The facility has implemented daily temperature checks for all inmates. *Id.* at 9. Inmates, including Mr. Guzman, have been tested for COVID-19. *Id.* FCI Danbury is staffed with full-time medical staff, including two doctors and registered nurses, and three EMTs. *Id.* at 11.

Mr. Guzman was treated on May 4, 2020 for complaints of stomach pain and vomiting. *Id.* at 14. Because of his symptoms, he was tested for COVID-19. He tested negative. *Id.* Nonetheless, he was placed in quarantine. His quarantine was scheduled to end on May 22, 2020. *Id.* The Court understands, however, that he remained in quarantine through at least May 27, 2020. Dkt. No. 611.

The Government opposed Mr. Guzman's motion on May 12, 2020. Dkt. No. 607 (the "Opposition"). In connection with the Opposition, the United States also provided the Court with a substantial number of Mr. Guzman's medical records. In the Opposition, the United States principally argued that there was no extraordinary and compelling reason to reduce Mr. Guzman's sentence because his medical conditions, together with the incremental risk associated with COVID-19, did not rise to that level. Mr. Guzman filed his reply on May 12, 2020. Dkt. No. 608.

Mr. Guzman presented additional concerns to the Court by letter on May 13, 2020. Dkt. No. 609. Mr. Guzman reported that, although he had been seen by medical personnel, he feared that their response to his complaints was inadequate and that the asserted deficiencies in Mr. Guzman's medical care had left him "petrified." *Id.* at 1. That letter requested that the Court intervene to order specific medical treatment for Mr. Guzman, including "chest x-rays and any other diagnostic or medical treatment necessary." *Id.* The Court received additional information regarding Mr. Guzman's care from the BOP on May 14, 2020. Dkt. No. 610.

In Mr. Guzman's penultimate missive to the Court, his counsel draws the Court's attention to another recent decision granting compassionate release to another inmate at FCI Danbury. Dkt. No. 611. Mr. Guzman also requests that the Court intervene with the BOP on his behalf. In particular, counsel requests that the Court order that the BOP provide them with updated medical records for Mr. Guzman, and that the Court "order FCI Danbury to allow Mr. Guzman out of his cell daily." *Id.* at 2. His counsel asserts that because he is being held in quarantine, Mr. Guzman has limited time outside of his cell. Counsel asks that the Court order BOP to change its quarantine policy as applied to Mr. Guzman.

In their most recent letter, Mr. Guzman's counsel reports that he has received another elevated liver test result. Counsel describes that the "test reveals that [Mr. Guzman] is suffering from liver disease." Dkt. No. 612. The letter from a doctor who has reviewed the record, submitted together with that letter, recognizes that "the nature of Mr. Guzman's liver injury is currently unknown." Dkt. No. 612-1 Attachment C. The physician's letter also states that the "differential for this injury is broad"—spanning from infection, medical toxicity, autoimmune disease, to cancer. *Id.* The letter describes increased risks of medical complications in the event that Mr. Guzman were to acquire the virus, including his asthma, and his "newly diagnosed liver disease which modifies his general health and decreases his ability to respond to infection." The physician also notes that Mr. Guzman's "███████████████████," while not impacting the risk of complications from COVID-19, make the experience of quarantine particularly difficult for him.

## II.    LEGAL STANDARD

As a general rule, courts are prohibited from modifying a defendant's term of imprisonment once it has been imposed. 18 U.S.C. § 3582(c) ("The court *may not* modify a term of imprisonment once it has been imposed except" in specified circumstances) (emphasis added). The statute provides for specific exceptions to that general rule: "upon motion of the defendant after the

4

defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," "after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that--extraordinary and compelling circumstances warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).

"Congress has delegated authority to the Sentencing Commission ('USSC') to 'describe what should be considered extraordinary and compelling reasons for sentence reduction.'"  *United States v. Ebbers*, — F. Supp. 3d —, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (quoting 28 U.S.C. § 994(t)).  The relevant policy statement is U.S.S.G. § 1B1.13 (the "Policy Statement").  The Policy Statement states that a court may reduce a defendant's term of imprisonment

> if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
>
> (1)  (A) extraordinary and compelling reasons warrant the reduction; or
>
>     (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
>
> (2)  the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3)  the reduction is consistent with this policy statement.

1 U.S.S.G. § 1B1.13.

The commentary to the Policy Statement provides guidance regarding the circumstances in which "extraordinary and compelling reasons" for a reduction in a defendant's sentence exist.[2]  The

---

[2]  The Policy Statement has not been updated since the passage of the First Step Act of 2018 (the "First Step Act"), Pub. L. No. 115 391, 132 Stat. 5194.  The First Step Act amended 18 U.S.C. § 3582 to permit a defendant to bring a motion for compassionate release if the BOP chose not to file one on his behalf.  The language of the Policy Statement does not

commentary highlights three particular grounds for such a finding: the medical condition of the

defendant; the age of the defendant; and family circumstances. 1 U.S.S.G. § 1B1.13 cmt. n.1(A)-(C).

The Court is not limited to the consideration of those factors alone, however. The Policy Statement

anticipates that other reasons can support a finding of extraordinary and compelling circumstances

that permit a sentence reduction. 1 U.S.S.G. § 1B1.13 cmt. n.1(D) (permitting a finding of

extraordinary or compelling circumstances when "there exists in the defendant's case an

extraordinary and compelling reason other than, or in combination with, the reasons described in

subdivisions (A) through (C) [medical condition, age, and family circumstances of the defendant]");

*see also United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *6-7 (S.D.N.Y. Apr. 6,

2020) (outlining the discretion of district courts in evaluating extraordinary and compelling

circumstances).

The Policy Statement states that the following medical conditions are sufficient to support a

finding of extraordinary and compelling reasons for a reduction in a defendant's sentence:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced
illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a
probability of death within a specific time period) is not required. Examples include
metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ
disease, and advanced dementia.

(ii) The defendant is—
(I) suffering from a serious physical or medical condition,
(II) suffering from a serious functional or cognitive impairment, or
(III) experiencing deteriorating physical or mental health because of the aging
process,

that substantially diminishes the ability of the defendant to provide self-care within

---

reflect the fact that under the First Step Act, the Court will be making determinations regarding the existence of
compelling and extraordinary circumstances without the input of the BOP. As the court observed in *Ebbers* the Policy
Statement "is at least partly anachronistic because it has not yet been updated to reflect the new procedural innovations
of the First Step Act. For example, it refers in its opening line to a 'motion of the Director of the Bureau of Prisons.'"
*Ebbers*, 2020 WL 91399, at *4. Similarly, the commentary's formulation of the catch all provision refers only to a
determination by the BOP, not by a district court. 1 U.S.S.G. § 1B1.13 cmt. n.1(D) ("As determined by the Director of
Prisons, there exists . . . .").

the environment of a correctional facility and from which he or she is not expected
to recover.

1 U.S.S.G. § 1B1.13 cmt. n.1(A). According to the commentary to the Policy Statement, compelling

medical conditions require a showing of a substantial, actual deterioration in the medical condition

of the defendant—either "a terminal illness" or "a serious physical or medical condition . . . from

which he or she is not expected to recover."

In this case—as in every other COVID-19 related compassionate release application that the

Court has reviewed—the defendant's medical condition is not the type of "Medical Condition"

described in the Policy Statement: he is not suffering from a terminal illness, and he does not have a

medical condition from which he is not expected to recover. Instead, he is at risk of getting a

disease, which in some cases is terminal. So a finding of extraordinary and compelling

circumstances in this case would rely not on the defendant's medical condition as described in the

Policy Statement alone. Instead, the courts that have found the existence of extraordinary and

compelling circumstances for a reduction in a defendant's sentence as a result of COVID-19 rely on

an evaluation of a combination of factors including the defendant's physical condition and the

court's assessment of the incremental risk associated with COVID-19. Many courts evaluating the

existence of compelling and extraordinary circumstances also weigh the adequacy of the BOP's

response to the pandemic, perhaps with an eye to the policy objective of thinning jail populations to

reduce the likelihood of the spread of the disease. *See, e.g., United States v. El-Hanafi*, No. 10-CR-162

(KMW), 2020 WL 2538384, at *5 (S.D.N.Y. May 19, 2020); *United States v. Zubkov*, No. 14-CR-773

(RA), 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020).

This is difficult terrain for a court. To the extent that an evaluation of the existence of

extraordinary and compelling circumstances has evolved to require an assessment of the adequacy of

the BOP's response—individual trial judges assessing individual cases on an emergency basis may

not have the opportunity to assess all of the systemic considerations facing the institution. And the

7

assessment will vary by facility and time.  The BOP's response has evolved over the course of the

pandemic:  one might reasonably be expected to have a different view of the adequacy of the BOP's

response, and the threat to inmates, in March than in June.  Harder still is the task of deciding

whether an inmate should face any incremental amount of risk—COVID-19 is dangerous; and life is

invaluable.  For that reason, the Court looks to the Policy Statement and its commentary for

guidance regarding what types of medical conditions should drive a finding of extraordinary and

compelling circumstances that justify the reduction of a defendant's sentence.

### III.    DISCUSSION

COVID-19 is a global pandemic.  *See* https://www.who.int/emergencies/diseases/novel-

coronavirus-2019/events-as-they-happen (last visited May 25, 2020).  Since its arrival in the United

States, the federal and local governments have reacted to stem the risk associated with the disease.

The risk of death associated with the disease varies substantially based on the age of the

infected patient.  *See, e.g.*, https://data.cdc.gov/NCHS/Provisional-COVID-19-Death-Counts-by-

Sex-Age-and-S/9bhg-hcku (Last visited May 25, 2020).  For example, in New York City—the

epicenter of the disease in the United States—the death toll has fallen disproportionately on people

who were more than 75 years old.  *See* https://www1.nyc.gov/site/doh/covid/covid-19-data.page

(Last visited June 10, 2020) (showing 8,397 confirmed deaths from COVID-19 in the 75+ age

bracket, or 48.66% of confirmed COVID-19 deaths).  For people in the 18-44 age bracket, in which

Mr. Guzman falls, the mortality rate was dramatically smaller.  *Id.* (showing 678 confirmed deaths

from COVID-19 in that age cohort, or 3.9% of confirmed COVID-19 deaths).

The risk of death from COVID-19 is greater for people with certain underlying health

conditions.  The Centers for Disease Control and Prevention track underlying health issues that are

reported to be associated with deaths as a result of COVID-19.  *See*

https://data.cdc.gov/NCHS/Conditions-contributing-to-deaths-involving-corona/hk9y-quqm (Last

visited May 25, 2020).  The risk of death associated with those comorbidities also varies dramatically by age.  For example, as of May 17, 2020, the total deaths coded as being associated with "Adult respiratory distress syndrome" numbered 10,205.  *Id.*  Of those, 91 (0.89%) were among people in Mr. Guzman's 25-34 age range.  There appears to be differing opinions regarding whether asthma, Mr. Guzman's principal underlying health condition, is numbered among the most substantial risk factors for death associated with COVID-19.  The CDC lists "People with Asthma" on its website as among the "People at Higher Risk for Severe Illness."  *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (Last visited May 25, 2020).  But the New York Times has reported that early data shows that asthma is not among the top COVID-19 risk factors.  *See* https://www.nytimes.com/2020/04/16/health/coronavirus-asthma-risk.html (Last visited May 25 2020).

The Court does not find that extraordinary and compelling circumstances exist to justify a reduction in Mr. Guzman's sentence.  Mr. Guzman is only 32 years old.  He is not in an age cohort associated with a high mortality rate from complications from COVID-19.  Mr. Guzman has had asthma throughout his life.  The medical records presented to the Court show that he is being treated for that condition.  *See* Opposition at 8.  Other cases examining claims for compassionate release on the basis of the risk of COVID-19 for inmates with asthma have reached the conclusion that asthma is not a sufficient basis to find extraordinary and compelling reasons to support a felon's early release.  *See, e.g.*, *United States v. Belle*, No. 3:18-CR-117-(VAB)-1, 2020 WL 2129412, at *5 (D. Conn. May 5, 2020) (denying compassionate release to 26 year old inmate with asthma convicted of firearms offense); *see also United States v. Garcia*, No. 16-CR-719-2 (RJS), 2020 WL 2539078, at *2 (S.D.N.Y. May 19, 2020) (collecting cases).

Nor does Mr. Guzman's liver injury support the requisite finding at this time, in part because the severity and cause of the injury is not known.  Mr. Guzman originally reported one liver function

test which, he asserted, was abnormal. *See* Mem. at 5. On this basis, he asserted in his Motion that

he "likely" suffers from liver disease. *Id.* In its Opposition, without the benefit of the supplemental

medical information later provided by Mr. Guzman, the United States reasonably questioned

whether the single abnormal test result was sufficient for Mr. Guzman or his counsel to draw that

conclusion. Opposition at 8. Since then, Mr. Guzman's additional abnormal test result supports a

doctor's conclusion that Mr. Guzman suffers from some type of liver injury. Dkt. No. 612-1

Attachment C. Significantly, however, the "nature of Mr. Guzman's liver injury is currently

unknown" and the "differential" for Mr. Guzman's test results is broad. *Id.* His test results could

suggest severe liver misfunction or a more modest cause such as an infection, or an adverse reaction

to medication. This makes a difference. While "end-stage liver disease" has been found to be a

basis for compassionate release under the statute, the Court has not identified cases in which liver

injury at the lower end of the broad differential associated with Mr. Guzman's test results has been

found to support such a finding. *Compare United States v. Resnick*, No. 12-CR-152 (CM) (S.D.N.Y.

Apr. 2, 2020) *with United States v. Kerrigan*, No. 16 CR. 576 (JFK), 2020 WL 2488269, at \*3 (S.D.N.Y.

May 14, 2020). Mr. Guzman is being tested and treated for his liver injury.

      Given Mr. Guzman's relative youth, while recognizing that pre-existing health issues of the

type described by Mr. Guzman are associated with a degree of increased risk from COVID-19, the

Court does not find the incremental risk associated with them to constitute extraordinary and

compelling circumstances.

      The Court recognizes the challenges as a result of COVID-19 facing inmates at FCI

Danbury, where Mr. Guzman is incarcerated. *See* Mem. at 10-11. Significantly, so has the Attorney

General. Over two months ago, he found that facility is "experiencing significant levels of

infection" and ordered that the BOP take action to ameliorate the conditions there. *See* Office of

the Attorney Gen., Mem. for Director of Bureau of Prisons: Increasing Use of Home Confinement

at Institutions Most Affected by COVID-19 (Apr. 3, 2020),

https://www.justice.gov/file/1266661/download (Last visited May 25, 2020).  And, as described

above, the facility has put in place a series of protocols designed to reduce the risk of spread of the

infection.

At Mr. Guzman's request, the Court has directed the BOP to provide it and the defendant's

counsel with information regarding his care and treatment.  The BOP has provided responses that

show that Mr. Guzman has tested negative for COVID-19, and is being held in quarantine while

being treated for his health concerns.  *See* Declaration of BOP, dated May 14, 2020.  To the extent

that the Court's appraisal of the BOP's response to the pandemic at FCI Danbury is a proper

justification for a finding of extraordinary and compelling circumstances for a reduction in Mr.

Guzman's sentence, BOP's affirmative efforts to treat him and to address broader issues at FCI

Danbury do not demand such a finding in Mr. Guzman's case at this time.[3]

The Court has reviewed the decision by Judge Nathan in *United States v. David Jones*, 15-cr-95

(AJN), which was attached to Mr. Guzman's most recent correspondence.  In that decision, the

court recognizes that the defendant's "entire housing unit—including [the movant]—has tested

negative for COVID-19."  Dkt. No. 611 at ECF p. 11.  The opinion goes on:  "The Court takes

note of the fact that containment measures implemented at FCI Danbury have succeeded at

lowering infection rates, but even with these new policies, the virus has not been eliminated from

the prison.  As a result, Mr. Jones continues to face extraordinary danger from COVID-19 so long

as he remains in custody, because he suffers from an underlying health condition that makes him

especially vulnerable to the virus."  *Id.*

---

[3]  Mr. Guzman's reply raises the concern that Mr. Guzman was visited by the facility's health care providers only in
response to the Court's order.  Reply, at 3-4 ("The conduct of FCI Danbury begs the question, what will happen to Mr.
Guzman when the Court isn't watching, or when the Government isn't actively seeking medical care on his behalf?).
The Court expects that the BOP will continue to provide appropriate care for Mr. Guzman, and invites a request for
further intervention in the event that Mr. Guzman's care becomes inadequate.

First, the Court must emphasize that each decision is made on the basis of the particular facts and circumstances of a given defendant. The medical condition of the defendant in *Jones* differed from that of Mr. Guzman. As a result, that decision is distinguishable. Second, the Court is assessing the situation based on the facts at the time of the motion—not in March at the outset of the pandemic—and the Court agrees with Judge Nathan's assessment of the success of the measures implemented by FCI Danbury by May.

But this Court does not believe that there is "extraordinary danger" because "the virus has not been eliminated" from a given prison. The *Jones* decision sets a very high bar—particularly at a time when the virus has not been eliminated outside of prisons (sadly, it is far from eliminated in the Bronx neighborhood to which Mr. Guzman asks that the Court release him. *See* https://www1.nyc.gov/site/doh/covid/covid-19-data.page (Last visited May 28, 2020) (showing 2,580 cases of COVID-19 in the zip code of Mr. Guzman's proposed apartment, with a death rate of 281 per 100,000)). The BOP has taken substantial steps to reduce the risk associated with COVID-19 at FCI Danbury. The Court does not believe that a risk is "extraordinary" so long as it is greater than zero. The Policy Statement does not support that construction of the term. There is some level of incremental risk associated with COVID-19 for Mr. Guzman because of his asthma and liver condition, but that incremental risk does not rise to the level of an "extraordinary and compelling reason" for his release given his age, medical condition, and the substantial steps that the BOP has taken to reduce that risk.

The Court empathizes with Mr. Guzman's fear of being incarcerated while COVID-19 remains a threat. His counsel understandably describes him as being "petrified." And the fear is likely exacerbated for Mr. Guzman, who has suffered from ███████████████████████ While real and warranted, the Court's profound sympathy for Mr. Guzman's situation does not justify a reduction in the sentence imposed for Mr. Guzman's criminal conduct on these facts.

12

The Court also cannot find that Mr. Guzman is not a danger to any other person or the community. Mr. Guzman's crime was serious—he was associated with a multi-defendant drug trafficking organization that sold crack and heroin. In connection with his participation in the conspiracy, Mr. Guzman possessed a gun. He pleaded guilty to possession of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i)—a crime with a mandatory minimum sentence of 5 years.

Significantly, Mr. Guzman committed this crime while he was on probation for another crime. Mr. Guzman had two prior criminal convictions—one for criminal possession of a controlled substance in the third degree, and another for attempted criminal contempt in the second degree. Presentence Report, Dkt. No. 384, at 11. In connection with the second of those offenses, Mr. Guzman was arrested after he violated an active order of protection by following the complainant to his house and trying to talk the complainant out of following through with a previous case. *Id.* ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. *Id.* at 15.

Mr. Guzman has a loving family. The Court appreciates the support that they would offer were he to be released. But the Court cannot conclude that Mr. Guzman will not be a danger to others or the community, given that he was involved in a drug conspiracy that adversely affected his community and that he possessed a dangerous weapon in connection with it. The Court's concern is fortified by the fact that he committed his offense while on probation for a prior crime. Mr. Guzman engaged in his prior criminal conduct despite the fact that he had asthma, and the Court has not been presented with evidence suggesting that Mr. Guzman's newly diagnosed liver injury would prevent him from committing further crimes that would endanger the community. The Court cannot conclude that Mr. Guzman is not a risk to the community and other persons.

Moreover, in considering the § 3553(a) factors, the Court does not believe that a reduction in

13

Mr. Guzman's sentence is warranted. The factor that addresses the defendant's need for medical care certainly weighs more heavily now as a result of COVID-19. But the other factors continue to weigh in favor of the sentence imposed. As described during the sentencing, the defendant's crime was very serious—it involved the possession of a dangerous weapon in connection with a conspiracy to sell dangerous narcotics. Tr. at 12. The need for personal deterrence and general deterrence remain as the Court assessed them at the time of sentencing. With respect to the defendant's need for personal deterrence, the Court observed a number of risk factors for recidivism. Tr. at 15. And the dangerous nature of the offense gave rise to particular concern "about the risk to others in the community should he choose to recidivate in the future." *Id.* The Court observed that Mr. Guzman had available the family support offered again now in connection with this application, but noted that "Mr. Guzman chose to engage in all of those activities [drug trafficking and firearm possession in furtherance of it], despite the presence of his partner and children in his life . . . ." *Id.* The sentence imposed by the Court was the guidelines sentence mandated by statute, and the balance of factors here does not suggest that the Court should reevaluate that decision now.

## IV.    ANCILLARY RELIEF

18 U.S.C. § 3582(c) provides the Court the authority to reduce Mr. Guzman's sentence. It does not provide the authority for the Court to manage the operations of prisons run by the BOP, so the Court declines to direct the BOP to modify its quarantine procedures as applied to Mr. Guzman.[4] The Court requests that the BOP provide Mr. Guzman's counsel with updated medical records to the extent that they have not already been provided to them; and expects that the BOP

---

[4] As an aside, the Court understands that the purpose of the quarantine, and limiting the movement of inmates generally, is to protect Mr. Guzman and other inmates from exposure to the virus. It is not clear to the Court that requiring BOP to modify its procedures to permit Mr. Guzman in particular more opportunities to move around the facility would not increase his risk and that of other inmates.

will provide Mr. Guzman with prompt and capable medical treatment.

## V.      CONCLUSION

COVID-19 and its impact on our City, Country, and the world has been extraordinary.  The disease has compelled substantial changes in how we operate and interact as a society.  Here, as in many areas of the law, the words "extraordinary and compelling" are not evaluated in a vacuum.  They must be viewed not only in light of their normal meaning, but also in the context of the standards established in the statute and guided by the Policy Statement.  Applied here, the incremental risk associated with COVID-19 does not give rise to an extraordinary and compelling reason to release Mr. Guzman.  And such a reduction in his sentence is not warranted as a result of the potential risk to the community associated with his release.

SO ORDERED.

Dated: June 10, 2020

GREGORY H. WOODS
United States District Judge